# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| GAYLA ARMENTA, as parent and next friend of H.A., a minor child, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-22-00659-JD |
| INDEPENDENT SCHOOL DISTRICT NO. 5 OF GARVIN COUNTY, a political subdivision of the State of Oklahoma also known as Paoli Public Schools, and DAVID MORRIS, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court are Motions to Dismiss filed by Defendant David Morris ("Morris") [Doc. No. 15] and Defendant Independent School District No. 5 of Garvin County, also known as Paoli Public Schools ("PPS") [Doc. No. 16] (collectively the "Motions"), which seek dismissal of Plaintiff's Second Amended Complaint ("Complaint") [Doc. No. 13] for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed responses to the Motions [Doc. Nos. 18, 19], and Defendants filed replies [Doc. Nos. 20, 21]. For the following reasons, the Court grants the Motions in part and denies them in part.

## I.   BACKGROUND

At the time of the events in question, H.A. was an eighth-grade student at PPS. She had been diagnosed with an intellectual disability and received special education

services at PPS.[1] Morris was the superintendent at PPS. Chase Parker ("Parker") was a high school senior and student teacher at PPS. He helped teach H.A.'s middle school physical education ("PE") class along with other PPS teachers and coaches. Parker was also the starting quarterback for the high school football team and a starter on the basketball team.

In December 2020 during one of H.A.'s PE classes, a dodgeball rolled into the school's weight room so H.A. went in to retrieve it. Parker followed H.A. into the weight room. He engaged her in conversation, then asked her for a hug. When H.A. hugged him, he began groping her. After, Parker asked H.A. for her phone number and snapchat username. By text and snapchat, Parker told H.A. to send him nude photographs.

At a PE class in February 2021, H.A. sat with several other middle school girls on the bleachers. Parker walked over to H.A. and slipped her a note asking her to meet him in the weight room. Once together in the weight room, Parker again began groping H.A. for approximately five minutes.

PPS learned of the assault when H.A. inadvertently sent an email about it to Morris after the second incident. Morris met with H.A. and the school counselor to discuss the incident. During the meeting, H.A. told them about Parker's behavior. Morris contacted Plaintiff, H.A.'s mother, and requested that H.A. complete her schooling online until the investigation was completed. Morris confirmed what happened and learned that Parker had assaulted other middle school girls in addition to requesting and receiving

---

[1] Plaintiff is not alleging "that H.A. was denied a Free and Appropriate Education [FAPE] pursuant to the IDEA." [Doc. No. 13 at 9 n.4].

nude photographs from them. When Morris finished the investigation, he concluded

Parker was guilty of the conduct alleged by H.A. However, Parker received "a slap on the

wrist" for his conduct.[2] [Doc. No. 13 at 7]. He was allowed to attend his prom,

baccalaureate, and graduation despite Morris' findings. PPS never advised Plaintiff or

H.A. of the results of the investigation. H.A. was required to complete her coursework

from home for the duration of the Spring 2021 semester.

Plaintiff filed this suit. Against Morris and PPS, she brings Fourteenth

Amendment claims for violations of H.A.'s equal protection, substantive due process,

and procedural due process rights. She also brings claims of negligence and violations of

Title IX solely against PPS.[3]

## II.   <u>LEGAL STANDARD</u>

"Rule 12(b)(6) dismissal 'is appropriate if the complaint alone is legally

insufficient to state a claim.'" *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1169 (10th

Cir. 2023) (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081,

1104–05 (10th Cir. 2017)). The Court must "view the allegations and all reasonable

inferences in favor of the plaintiffs." *Hubbard v. Okla. ex rel. Okla. Dep't of Hum. Servs.*,

759 F. App'x 693, 696 (10th Cir. 2018) (unpublished).

---

[2] The Complaint does not state exactly what punishment Parker received, only that
it was "a slap on the wrist." [Doc. No. 13 at 7]. Taking all reasonable inferences in favor
of Plaintiff, the Court concludes Parker's punishment was minimal.

[3] Originally, Plaintiff also brought claims against Parker. However, Plaintiff
voluntary dismissed the claims against him under Federal Rule of Civil Procedure 41.
[Doc. No. 25].

In considering a motion to dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Woodard*, 912 F.3d 1278, 1299 (10th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679.

## III.   ANALYSIS

### A.   Plaintiff has not plausibly alleged equal protection or substantive due process claims against Morris.

#### 1.   Plaintiff's equal protection claim against Morris fails.

Plaintiff argues that Morris violated the Equal Protection Clause because he was deliberately indifferent to Parker's sexual assault of H.A. as evidenced by his failure to promulgate training and procedures that ensured his staff knew how to prevent and respond to sexual assault. Plaintiff premises her argument on Morris' liability as a supervisor. [Doc. No. 18 at 13] ("Plaintiff does not allege that Defendant Morris himself engaged in harassment based on sex. Rather, she alleges that Morris is a state actor whose supervisory inaction violated the Equal Protection Clause . . . .").

4

Since "vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 676). In such situations, "the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Id.* "[T]o establish supervisory liability, a plaintiff must show that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Dodds*, 614 F.3d at 1199).

Here, Plaintiff has not plausibly pled that Morris acted with the state of mind required to establish the alleged equal protection violation—i.e., purposeful discrimination. *Dodds*, 614 F.3d at 1198 ("Ashcroft and Mueller's alleged deliberate indifference to or knowledge and acquiescence in their subordinates' unconstitutional conduct . . . did not amount to the state of mind required to establish Ashcroft and Mueller violated equal protection guarantees—purposeful discrimination—and the [Supreme Court] dismissed Iqbal's claims against them." (citing *Iqbal*, 556 U.S. at 683)). Nothing in the Complaint suggests Morris purposefully discriminated against H.A. Nor does Plaintiff argue that he did so. Instead, Plaintiff mistakenly argues he was

deliberately indifferent to H.A.'s harassment.[4] Because Plaintiff has not sufficiently alleged that Morris, by virtue of his own conduct and state of mind, violated the Equal Protection Clause, the Court dismisses this claim against Morris.[5]

> 2.   Plaintiff's substantive due process claim against Morris fails.

Plaintiff alleges a substantive due process claim against Morris, stating that "Morris' decision to banish H.A. from attending PPS in-person is the exact kind of arbitrary governmental decision that the substantive due process clause of the Fourteenth Amendment seeks to protect." [Doc. No. 18 at 21].

---

[4] The Court understands Plaintiff's mistake. Before *Iqbal*, deliberate indifference would have been the appropriate standard. *See Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1250 (10th Cir. 1999) ("[A] governmental official or supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment."). But "after *Iqbal*, Plaintiff can no longer succeed on a § 1983 claim against Defendant by showing that as a supervisor he behaved 'knowingly or with deliberate indifference that a constitutional violation would occur' at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges." *Dodds*, 614 F.3d at 1204 (quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)). To add to Plaintiff's confusion, the Tenth Circuit stated in dicta of an unpublished opinion "that deliberate indifference to known sexual harassment can, under certain circumstances, serve as a basis for supervisory liability under an equal-protection theory." *Burke v. New Mexico*, 696 F. App'x 325, 330 (10th Cir. 2017) (unpublished). It is unclear to the Court what "certain circumstances" *Burke* refers to, but, in light of *Dodds*' and *Iqbal*'s binding authority, it concludes no such circumstances are present here.

[5] Even if the Court construes Plaintiff's argument to be that Morris directly violated H.A.'s equal protection rights, this claim similarly fails because Plaintiff has not alleged Morris purposefully discriminated against H.A. *Bird v. W. Valley City*, 832 F.3d 1188, 1208 (10th Cir. 2016) ("[P]urposeful discrimination is an essential element of an equal protection violation." (alternation in original) (quoting *Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 n.1 (10th Cir. 1990))).

Plaintiff's arguments require the Court "to wade into the murky waters of § 1983–based" substantive due process claims. *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting *Becker v. Kroll*, 494 F.3d 904, 913 (10th Cir. 2007)). "[T]he Supreme Court recognizes two types of substantive due process claims: (1) claims that the government has infringed a 'fundamental' right, and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019) (internal citations omitted). "The concept of substantive due process is not fixed or final, . . . but generally is accorded to matters relating to marriage, family, procreation, and the right to bodily integrity . . . ."*Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1257 (10th Cir. 1996) (citations omitted).

"As a general matter, the [Supreme Court] has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Thus, "[t]he doctrine of judicial self-restraint requires [the Court] to exercise the utmost care whenever [it is] asked to break new ground in this field. It is important, therefore, to focus on the allegations in the complaint to determine how [Plaintiff] describes the constitutional right at stake . . . ." *Collins*, 503 U.S. at 125.

Here, Plaintiff makes it very clear that she is not seeking to hold Morris liable for Parker's sexual harassment. *See* [Doc. No. 18 at 21] ("Plaintiff's substantive due process claim is not based on Defendant Morris' conduct before February 2021. Rather,

Plaintiff's substantive due process claim is based on Defendant Morris' arbitrary and conscious shocking decision to punish H.A. <u>after</u> learning that she had been victimized by Chase Parker."). It is less clear what substantive right forms the underlying basis for Plaintiff's substantive due process claim.[6] Plaintiff's briefing seems to indicate it is H.A.'s "substantive due process right to a free public education." *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003). "[E]ven assuming [Plaintiff's] interest in a public education triggers substantive due process guarantees," the Complaint does not include allegations showing that right has been violated. *Id.* Despite not being allowed to attend regularly scheduled classes, H.A. was allowed to complete her schoolwork remotely and occasionally attend tutoring sessions on campus.

Therefore, H.A. was not deprived of her right to a free public education. The Court dismisses Plaintiff's substantive due process claims against Morris.

---

[6] Because Plaintiff does not argue Morris should be held liable for Parker's assault and Morris himself did not assault H.A., sexual assault cannot serve as the underlying basis for Plaintiff's claims even though "[s]exual assault or molestation by a school teacher violates a student's substantive due process rights." *Abeyta*, 77 F.3d at 1255.

At certain points, Plaintiff seems to be arguing that H.A.'s punishment itself (i.e., completing her schoolwork remotely) violated her substantive due process rights. Notably, "excessive corporal punishment violates the pupil's substantive due process rights." *Garcia by Garcia v. Miera*, 817 F.2d 650, 653 (10th Cir. 1987). But here, there are no allegations of *corporal* punishment. And Plaintiff points the Court to no binding authority where non-corporal punishment has formed the basis of a successful substantive due process claim.

**B.      Plaintiff has not plausibly alleged procedural due process claims against Morris or PPS.**

Plaintiff argues H.A. was deprived of procedural due process by PPS and Morris because she was required to complete the remainder of the Spring 2021 semester from home. She claims "H.A. had a protected property interest in attending public school and pursuing her education, of which she cannot be deprived of without due process." [Doc. No. 13 at 27]. Plaintiff also alleges H.A. "had a protected liberty interest in her good name, reputation, honor, and integrity, which cannot be deprived without due process." *Id.*

"[T]he range of interests protected by the procedural due process clause is not infinite . . . ." *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1256 (10th Cir. 2008) (alteration in original) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 570 (1972)). "[R]ather, '[a] person alleging that he has been deprived of his right to procedural due process must prove two elements: that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and that he was not afforded an appropriate level of process.'" *Id.* (second alteration in *Couture*) (quoting *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 483 F.3d 1086, 1093 (10th Cir. 2007)).

In their Motions, Defendants argue Plaintiff has not plausibly alleged a procedural due process claim because she has not shown H.A. was deprived of constitutionally protected property interest. They contend that no legal authority supports the assertion that "H.A. had a property interest in *physically* attending school." [Doc. No. 15 at 5]

9

(emphasis added). In her response, Plaintiff says the first element of the procedural due process analysis is met because "it is clearly established that students, such as H.A., have protected property interests in pursuing a public education." [Doc. No. 18 at 17]. This is, of course, true. *See Albach v. Odle*, 531 F.2d 983, 985 (10th Cir. 1976) ("*Goss* recognizes a student's entitlement to a public education as a property interest which is constitutionally protected." (citing *Goss v. Lopez*, 419 U.S. 565 (1975))).

But under a procedural due process analysis, Plaintiff must have a constitutionally protected interest in the right she was deprived of. The right Plaintiff claims H.A. was deprived of is not entitlement to public education in general, but entitlement to attend in-person classes during normal classroom hours. And Plaintiff, in no way, addresses whether this is a constitutionally protected property interest despite Defendants explicitly arguing it is not. The Court declines to make Plaintiff's arguments for her and only addresses the arguments Plaintiff raises. *Hayes v. SkyWest Airlines, Inc.*, 12 F.4th 1186, 1201 (10th Cir. 2021) ("Forfeiture occurs when a party fails to raise a theory, argument, or issue before the district court.").

Plaintiff contends she meets the first element of the procedural due process analysis because H.A. had a property interest in pursuing and receiving a public education. But Plaintiff's allegations reflect that H.A. was permitted to continue her coursework, attend live-streaming of classes, view pre-taped lessons, ask teacher's questions via email, and attend occasional tutoring sessions on PPS's campus. Even making reasonable inferences in favor of Plaintiff, the Complaint does not show that H.A. was deprived of her right to a public education.

Therefore, the Court dismisses her procedural due process claims against Morris and PPS. Because the Court determines that Plaintiff has not plausibly alleged a procedural due process claim on the merits, it does not address whether Plaintiff adequately alleged municipal or supervisor liability for this claim.[7]

### C.   Plaintiff has not plausibly alleged equal protection or substantive due process claims against PPS.

Plaintiff argues that H.A.'s sexual harassment violated her equal protection and substantive due process rights. PPS maintains it cannot be held liable for her sexual harassment and assault because Plaintiff has not established municipal liability.

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis omitted) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "[A] plaintiff seeking to impose liability on a municipality under § 1983" must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). An entity is not liable under § 1983 "unless deliberate action attributable to the municipality itself is the

---

[7] Plaintiff's arguments regarding H.A.'s reputation fail because she has not successfully alleged a violation of some other tangible property or liberty interest. *Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996) ("The Supreme Court, in *Paul v. Davis*, 424 U.S. 693, 701 (1976), concluded that damage to an individual's reputation alone, apart from some more tangible interest, is not enough to establish a due process violation.").

'moving force' behind the plaintiff's deprivation of federal rights." *Id.* at 400 (emphasis omitted).

> Any of the following constitute an official policy: '(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.'

*Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (quoting *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1184 (10th Cir. 2020)).

"After establishing a municipal policy or custom, a plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (quoting *Brown*, 520 U.S. at 405).

The injury that is the basis for Plaintiff's equal protection and substantive due process claims is H.A.'s sexual harassment. *See* [Doc. No. 13 at 24] ("Under the Equal Protection Clause of the Fourteenth Amendment, H.A. had the right to equal access to an educational environment free from harassment and discrimination on the basis of sex.");

[*Id.* at 28–29] ("H.A. has a constitutional right to personal security, bodily integrity, due process, and to be secure and to be left alone, all protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.").

The Court acknowledges that sexual assault and harassment can serve as the underlying equal protection and substantive due process violations for municipal liability. *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights."); *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008) ("A school district's liability for sexual harassment under the Equal Protection clause is analyzed under a municipal liability framework."). But, as alleged, none of the school's policies or customs were the "moving force" behind H.A.'s sexual harassment or assault.

For example, although Plaintiff argues PPS's policy for addressing sexual harassment was deficient because it did not include a clear description of how PPS students were supposed to report sexual harassment, such a policy does not meet the municipal liability causation standard. An unclear policy regarding how to report sexual harassment does not cause sexual harassment. Additionally, Plaintiff contends PPS's disparate treatment of female students downplayed Parker's sexual harassment and enabled him to engage in continued sex discrimination, harassment, and assault of female students. But Plaintiff does not give specifics regarding how PPS downplayed sexual

assault in the past or allowed it to occur to other students before H.A.'s incidents.[8] Without such allegations, Plaintiff cannot show that PPS's prior failure to take sexual harassment seriously caused H.A.'s harassment.[9]

Plaintiff's arguments pertaining to PPS's inadequate training of its employees is similarly unsuccessful. "[F]or claims of inadequate hiring, training, or other supervisory practices, a plaintiff 'must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'" *Waller*, 932 F.3d at 1284 (quoting *Brown*, 520 U.S. at 407). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . ." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

---

[8] Only conclusory statements are included in the Complaint for these allegations. *See, e.g.*, [Doc. No. 13 at 14] ("By ignoring allegations and discouraging female students from reporting sexual assaults committed by student athletes, PPS created an environment where football and basketball players can sexually assault female students without repercussion.").

[9] The Court premises much of its analysis on Plaintiff's failure to establish a direct causal link between PPS's policies and customs and H.A.'s injuries. However, it is also important to note that for an informal custom to qualify as an official policy for purposes of municipal liability, "[p]roof of a single incident of unconstitutional activity is not sufficient." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Plaintiff has not plausibly alleged the existence of an official policy.

Here, PPS had no such notice prior to any of H.A.'s assaults. Plus, as previously stated, Plaintiff does not detail any prior incidents of sexual assault that took place at PPS that would have put it on notice. The Court concludes that Plaintiff's allegations do not show that PPS had notice that its failure to provide its employees with specific training regarding how to prevent or respond to incidents of sexual assault was substantially certain to result in a constitutional violation.[10]

Thus, Plaintiff has failed to plausibly allege the elements needed to show municipal liability is appropriate. The Court therefore does not reach the merits of Plaintiff's equal protection or substantive due process claims against PPS. These claims are dismissed.

### D.   Plaintiff has not plausibly alleged negligence claims against PPS.[11]

Plaintiff argues that PPS negligently supervised Parker, negligently investigated H.A.'s assault, and negligently hired, retained, and trained its employees. PPS argues these claims are barred by the Oklahoma Governmental Tort Claims Act ("OGTCA") because its actions were discretionary. Okla. Stat. tit. 51, § 151 *et seq.*

---

[10] According to the Complaint, PPS's policies dictated that "any employee or student found to have engaged in sexually harassing behavior, shall be subject to punishment." [Doc. No. 13 at 16]. But PPS "failed to provide training or education to administrators, staff, students, or parents on protecting students from sexual harassment and violence." [*Id.* at 17].

[11] The Court structures its negligence analysis a little differently than Plaintiff's briefing. However, viewing Plaintiff's allegations in her favor, the Court thinks this format more clearly addresses Plaintiff's claims.

The State of Oklahoma adopted the doctrine of sovereign immunity for "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment." *Id.* § 152.1(A). PPS is considered a political subdivision. *Id.* § 152(11)(b) ("'Political subdivision' means . . . a school district . . . ."). "The [OGTCA] provides 'the exclusive remedy for an injured plaintiff to recover against [an Oklahoma municipality] in tort.'" *Clark v. Colbert*, 895 F.3d 1258, 1264 (10th Cir. 2018) (second alteration in *Clark*) (quoting *Nail v. City of Henryetta*, 911 P.2d 914, 917 (Okla. 1996)). Under the OGTCA, "a political subdivision shall not be liable if a loss or claim results from . . . [a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy" or "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." Okla. Stat. tit. 51, § 155(4), (5).

        1.    <u>Plaintiff has not plausibly alleged a negligent failure to supervise claim against PPS.</u>

Plaintiff argues that PPS negligently supervised Parker and H.A., which resulted in an unsafe school environment. She contends that OGTCA immunity does not apply because "PPS policies are clear that PPS staff has a duty to supervise the students in its care," and PPS breached that duty. [Doc. No. 19 at 16].

"A great deal of discretion is involved in determining what security measures are needed . . . . The decisions required to be made by the School Board and its employees and agents called for legitimate judgment calls." *Truitt v. Diggs*, 611 P.2d 633, 635

(Okla. 1980). But once a specific policy or regulation is adopted and enforced, the political subdivision (i.e., its employees) must do so without negligence. *See J.W. v. Indep. Sch. Dist. No. 10 of Dewey Cnty.*, 500 P.3d 649, 659 (Okla. Civ. App. 2021) ("But having made the decision to enforce the policy in this case, [the school officials] must do so in a manner consistent with the applicable standard of care.").

Here, Plaintiff does not allege what policies PPS had in place regarding the supervision of its students and student teachers during PE class.[12] Without knowing what policies PPS chose to adopt and enforce, the Court cannot determine whether it was negligent in its implementation of those policies based on the facts alleged in Plaintiff's Complaint. Additionally, "[c]laims for failing to maintain a safe school premises and negligent supervision of students and teachers in the high school gymnasium are equivalent to a claim for negligent supervision during the lunch period" which the Oklahoma Supreme Court has determined falls within the discretionary function

---

[12] In her Response, Plaintiff cites to PPS's Student Discipline Activities Policy and Teacher Job Description. She then says that "[c]itation to this public record does not convert Defendants' motion to one for summary judgment. . . . Moreover, these policies are not offered as evidence at this time but rather to give the Court context for the claims asserted in this case which will be proved in discovery." [Doc. No. 19 at 17]. Plaintiff also cites to *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020), which discusses judicial notice. However, Plaintiff did not actually request, via motion or otherwise, that the Court to take judicial notice of these polices and it is not required to do so sua sponte. *Id.* ("A district court, however, *may* 'take judicial notice of its own files and records, as well as facts which are a matter of public record . . . .'" (emphasis added)). But even if the Court were to take judicial notice of these polices, it is not convinced they mandate certain non-discretionary conduct regarding what type of supervision teachers must give to students and student teachers.

exception of the OGTCA. *Najera v. Indep. Sch. Dist. of Stroud No. 1-54 of Lincoln Cnty.*, 60 F. Supp. 3d 1202, 1206 (W.D. Okla. 2014) (citing *Truitt*, 611 P.2d at 635).

Accordingly, the Court holds that PPS is immune to Plaintiff's claim for negligent supervision. The Court dismisses this claim.

> 2.  <u>Plaintiff has not plausibly alleged a negligent investigation claim against PPS.</u>

Plaintiff argues PPS failed to investigate H.A.'s claims in accordance with its existing policies and procedures. She maintains PPS, through Morris, was negligent because it did not comply with its own policies for investigations.

The relevant OGTCA language here is nearly identical to the Federal Tort Claim Act's discretionary function exception language. *Compare* Okla. Stat. tit. 51, § 155(5) (exempting "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees"), *with* 28 U.S.C. § 2680(a) (exempting "performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government"). Given the minimal number of Oklahoma state court negligent investigation cases, the Court considers how this language has been applied and interpreted in the federal context for guidance.[13] *See Nguyen v. State*, 788 P.2d 962, 964 (Okla. 1990) (applying "[t]he majority approach under the Federal Tort Claims Act").

---

[13] The most similar case the Court could find is *J.W. v. Indep. Sch. Dist. No. 10 of Dewey Cnty.*, 500 P.3d 649 (Okla. Civ. App. 2021). Although the Court attempts to apply its reasoning here, the facts and posture of *J.W.* are significantly different. In *J.W.*, the school district had adopted and chosen to enforce an anti-bullying policy, and the Court

Here, Plaintiff's only allegation regarding the contents of PPS's sexual harassment policy is that it "provides absolute autonomy to the PPS superintendent to investigate and render a punishment/decision." [Doc. No. 13 at 13]. As alleged, this policy appears to give the superintendent, in this case Morris, "virtually complete discretion to investigate in any manner [he] sees fit." *Cooper v. Am. Auto. Ins. Co.*, 978 F.2d 602, 612 (10th Cir. 1992). The Court "is mindful that a litigant may have a valid [OGTCA] claim when there is a demonstrated negligent breach in the performance of specified actions mandated by [policy]." *Id.* at 612 n.8. But as alleged, the policy gives a vast amount of discretion to Morris regarding how to conduct the investigation. This kind of policy is explicitly accounted for in the OGTCA. Okla. Stat. tit. 51, § 155(5) (stating that "[p]erformance of . . . any act or service which is in the discretion of the . . . political subdivision or its employees" shall not give rise to liability). As such, Morris' performance of the investigation was inherently discretionary, and as alleged, PPS cannot be held liable for his decisions. *See United States v. Gaubert*, 499 U.S. 315, 324 (1991) ("When established governmental policy, as expressed or implied . . . , allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.").

Thus, the Court holds that PPS is immune from suit for Plaintiff's negligent investigation claim. *Nguyen*, 788 P.2d at 965 ("[T]he discretionary function exception is 'designed to bar tort litigation challenging governmental decisions which are founded on

---

of Civil Appeals remanded the case so the lower court could determine if the policy was negligently enforced.

a balancing of competing policy considerations . . . .'" (quoting *Lipari v. Sears, Roebuck & Co.*, 497 F. Supp. 185, 195 (D. Neb. 1980))). The Court dismisses this claim. *See Cooper*, 978 F.2d at 612 ("With respect to the claims that the investigation of [the victim] itself was negligently performed, we could find no regulations mandating particular inquiries to be made or methods of making them.").

> 3.   Plaintiff has not plausibly alleged a negligent hiring, supervising, retention, or training claim against PPS.

Plaintiff argues PPS "fail[ed] to properly hire, train, supervise and retain Chase Parker." [Doc. No. 13 at 19]. Defendants argue PPS is entitled to immunity on this claim.

The Court does not decide whether immunity is appropriate in this scenario because even if not, Plaintiff has not adequately stated a claim for negligence on this basis under Rule 12(b)(6). Under Oklahoma law,

> Employers may be held liable for negligence in hiring, supervising or retaining an employee. In such instances, recovery is sought for the employer's negligence. The claim is based on an employee's harm to a third party through employment. An employer is found liable, if—at the critical time of the tortious incident—, the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought.

*N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999) (footnotes omitted). Here, Plaintiff has not alleged any facts showing that PPS "had reason to believe that [Parker] would create an undue risk of harm to others." *Id.* Nothing in the Complaint suggests PPS was put on notice regarding Parker's abusive propensities prior to H.A. sending an email to Morris. Because at the time of H.A.'s assault PPS had no reason to suspect Parker would harm others, it cannot be found negligent on this basis.

Therefore, the Court concludes Plaintiff fails to state a claim for negligent hiring, training, and retention and dismisses this claim.

**E.    Plaintiff has plausibly alleged Title IX violations against PPS.**

Plaintiff argues that PPS violated Title IX because it did not reasonably respond to H.A.'s reports of sexual harassment. She also contends PPS retaliated against her for reporting the discrimination.

1.    Plaintiff has plausibly alleged that, under Title IX, PPS was deliberately indifferent to her sexual harassment.

PPS argues it could not be deliberately indifferent to Parker's sexual assaults because it did not have notice before they happened, and after PPS investigated, H.A. was not assaulted again. Plaintiff explains that PPS's deliberate indifference is evidenced by the way it responded to the harassment.

Section 901(a) of Title IX states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Sexual harassment is a form of discrimination on the basis of sex and is actionable under Title IX." *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006). However, a school district "is not vicariously liable to its students for all sexual harassment caused by teachers, and the Supreme Court has held that, under Title IX, a student may hold a school liable 'only for its own misconduct.'" *Id.* (quoting *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999)).

"A school district may be liable under Title IX provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school." *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008). "A district is deliberately indifferent to acts of student-on-student harassment 'only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Id.* at 1121 (alteration in *Rost*) (quoting *Davis*, 526 U.S. at 648).

After hearing of Parker's predatory behavior, Morris investigated by talking with other middle school students, Parker, and Plaintiff. Morris learned that Parker had solicited and received nude photographs from other middle school girls. He also found out that Parker had physically assaulted other girls at the school. After Morris' investigation, PPS concluded Parker was guilty of sexually assaulting and harassing H.A. and other students. However, Parker's punishment was minimal and H.A. was forced to complete her schoolwork at home for the remainder of the semester.

This alleged response is clearly unreasonable considering the investigation's outcome. After learning of the assault, PPS investigated and concluded that Parker was guilty of sexually harassing and assaulting minors—specifically H.A. But he was not punished in any major way. Instead, PPS responded by disallowing H.A. from attending in-person classes which then deprived her of access to the educational benefits or opportunities provided by PPS. At this stage, the Court determines Plaintiff has

adequately stated a Title IX violation based on PPS's deliberate indifference to Parker's sexual assault of H.A.[14]

>   2.   Plaintiff has plausibly alleged a retaliation claim under Title IX.

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). When analyzing retaliation claims under Title IX, "[t]he *McDonnell Douglas* framework applies." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 n.8 (10th Cir. 2017). Under this framework,

> the plaintiff must first make out a prima facie case of retaliation by showing (1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable [person] would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.

*Berry v. Mission Grp. Kan., Inc.*, 463 F. App'x 759, 766 (10th Cir. 2012) (unpublished) (first alteration in original) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987,

---

[14] The analytical framework for Title IX claims is different than the standards applied to constitutional claims. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009) ("Even where particular activities and particular defendants are subject to both Title IX and the Equal Protection Clause, the standards for establishing liability may not be wholly congruent. For example, a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference. *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998). A plaintiff stating a similar claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).").

998 (10th Cir. 2011) and citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

The only argument PPS offers in support of its motion to dismiss Plaintiff's retaliation claim is that H.A. did not complain of the harassment. Instead, it claims "Morris discovered documentary evidence of the assaults and initiated an investigation himself." [Doc. No. 16 at 10]. Taking all reasonable inferences in favor of Plaintiff, this is not supported by the allegations in the Complaint. Regardless, H.A. only needed to engage in protected opposition to discrimination. So, agreeing to meet with Morris and sharing about the two assaults qualifies under the *McDonnell Douglas* framework. The Court denies PPS's Motion as to this claim.

## IV.   <u>CONCLUSION</u>

The Court concludes that Plaintiff has failed to plausibly state Fourteenth Amendment and negligence claims. Thus, the Court GRANTS Defendants' Motions as to Plaintiff's equal protection, substantive due process, procedural due process, and negligence claims. These claims are dismissed without prejudice, and Morris is dismissed as a party.[15] The Court also concludes Plaintiff has plausibly alleged Title IX claims. The Court DENIES PPS's Motion as to these claims.

IT IS SO ORDERED this 21st day of June 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[15] Because the Court determines that Plaintiff failed to state claims for relief against Morris, it does not reach the issue of whether he is entitled to qualified immunity.